1    0

O

5                                                    JS - 6

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

11   UNITED STATES OF AMERICA,      )   Case No. CV 13-08906 DDP ✓
                                    )     [CR 09-00460 DDP]
12        Plaintiff-Respondent,     )
                                    )   **ORDER DENYING MOTION FOR RELIEF**
13        v.                        )   **UNDER 28 U.S.C. § 2255**
                                    )
14   VINCENT ANTHONY JONES,         )   [CV Dkt. Nos. 1, 8, 10]
                                    )   [CR Dkt. Nos. 189, 196, 197]
15        Defendants-Petitioner.    )
     _____ )

17       Before the court is Petitioner Vincent Anthony Jones

18   ("Petitioner")'s Motion to Vacate, Set Aside, or Correct Sentence

19   Pursuant to 28 U.S.C. § 2255. (Dkt. No. 1.) Also before the court

20   are two Motions to Amend Original and Timely Filed 28 U.S.C. § 2255

21   Motion Pursuant to Relief Under Rule 15(c). (Dkt. Nos. 8, 10.)

22   Having reviewed the materials submitted by the parties and

23   considered the arguments advanced therein, the court adopts the

24   following order.

25   **I.   Background**

26       On May 12, 2009, Petitioner was indicted for four counts of

27   bank robbery and one count of attempted bank robbery, all in

28   violation of 18 U.S.C. § 2113(a).

**A.    Guilty Plea**

Petitioner initially pled not guilty to all counts of the indictment. (Dkt. No. 13.) However, on May 6, 2010, after several days of trial, Petitioner changed his plea to guilty on count five, bank robbery in a violation of 18 U.S.C. § 2113(a). (CR Dkt. No. 147.) In entering a guilty plea, Petitioner agreed to the government's Offer of Proof, which stated as follows:

> On May 1st, 2009 at approximately 2:33 p.m. defendant entered a Farmers and Merchant's Bank located at 3140 East Anaheim Street, in Long Beach, California. Defendant handed a teller MAG note which read "I will shoot you in the head. Give me your money, top and bottom drawer," or words to that effect.
>
> By providing the note to the teller, defendant intended to and did intimidate the teller into giving defendant Farmers' and Merchant's money.
>
> The teller gave defendant $1,496 of Farmers' and Merchant's money. Defendant took the money and left the bank.

(Government's Opposition to Motion Ex. 3 at 14.) Petitioner was subsequently committed on March 3, 2011 to the custody Bureau of Prisons for a term of 84 months, with 3 years of supervised release. (See CR Dkt. No. 163.)

**B.    Evidence Proffered by the Government**

Prior to trial, the Long Beach Police Department detective assigned to the case, Detective Donald Collier, submitted a sworn declaration describing the following alleged facts to which he was prepared to testify at trial and other evidence developed by the police. (Gov. Ex. 1 [Declaration of Donald Collier].)

Prior to Defendant's arrest on May 1, 2009, Detective Collier was aware of and was investigating three other bank robberies and one attempted robbery between April 10, 2009 and April 24, 2009 which he suspected were committed by the same person. (Id. at 1-2.)

The perpetrator in each robbery was consistently described by bank employees as a black male, thirty five to forty years old, five feet eleven inches to six feet tall, weighing approximately two hundred and eighty five pounds, with long black curly hair. (<u>Id.</u> at 2 and Ex. 2 at 1.) Surveillance images of the three robberies and attempted robberies showed the perpetrator wearing distinctive clothing, including a "Kangol" type hat, sunglasses, and a white tee-shirt. (<u>Id.</u>)

In response to these robberies, the Federal Bureau of Investigations (FBI) circulated a Criminal Information Bulletin ("Bulletin"). (<u>Id.</u>; Gov. Ex. 2.) The Bulletin presented surveillance images of the robberies, listed the location and times of the robberies, and noted that the perpetrator had a modus operandi of entering banks on late Friday afternoons and passing a demand note to the teller indicating he has a weapon but does not want to shoot. (Collier Decl. at 2; Gov. Ex. 2.)

On May 1, 2009, Detective Collier was informed by police dispatch that a robbery had been committed at approximately 2:30 pm at Farmers & Merchants ("F&M1") Bank located at 3140 E. Anaheim Street in Long Beach, California. (<u>Id.</u> at 3.) Detective Collier promptly went to the F&M1 location to investigate. A teller reported that he had noticed that a person matching the Bulletin had entered the bank. (<u>Id.</u> at 4.) The perpetrator then handed the teller a note saying he was going to shoot the teller in the head unless the teller complied with his demand to hand over money. (<u>Id.</u>) In response, the teller was able to give the perpetrator ten "bait" money bills with serial numbers specifically marked and used by banks in robberies, among approximately $1,566 in total. (<u>Id.</u>) .

1  (Id.) Detective Collier confirmed that the victim teller's

2  description of the robber matched the description of the bank

3  robber in the other robberies under investigation. (Id.) He also

4  observed still images of the person who had robbed the bank, which

5  showed that the perpetrator was wearing a white tee shirt, dark

6  jeans, and dark "Kangol" type hat. (Id.) This attire matched that

7  worn by the perpetrator in the previous robberies. (Id.)

8        Approximately 20 minutes later, at about 3:30 pm, Detective

9  Collier was informed by police dispatch that a person matching the

10 description in the Bulletin was inside a second Farmers & Merchants

11 Bank ("F&M2"), located at 4545 California Avenue in Long Beach,

12 waiting in line. (Id. at 5.) Shortly thereafter, dispatch reported

13 that the perpetrator had left the bank and was walking down an

14 alley. (Id.) When Detective Collier arrived at F&M2, a suspect had

15 been arrested. (Id. at 6.)

16       The arresting officer, Long Beach Police Department officer

17 Claudia Lopez, informed Detective Collier that, after F&M2 bank

18 employees recognized the person from the Bulletin, the person

19 started fumbling with a plastic checkbook, put a piece of paper in

20 his mouth, acted like he forgot something, and then left the

21 branch. (Id. at 5.) Bank employees also told Officer Lopez that the

22 person had headed towards the alley behind the bank. (Id.) As

23 Officer Lopez started driving down the alley, she observed a black

24 male, wearing a black tee shirt and blue jeans. (Id.; Mot. Ex. A

25 [Police Report by Officer Claudia A. Lopez] at 1.) She noticed that

26 the suspect was holding a white tee shirt, purple hat, and

27 sunglasses. (Id.) Officer Lopez recognized the suspect from the

28 Bulletin. (Collier Decl. at 5; Lopez Report at 1.) Based on these

4

1  observations, she arrested the suspect, who is Petitioner in this
2  case. (Id.; Collier Decl. at 5; Lopez Report at 1.)

3      Upon looking at the suspect, Detective Collier recognized the
4  man as the bank robber that he and others had been investigating in
5  the prior three bank robberies and one attempted robbery and the
6  person who robbed the F&M1 bank earlier on the same day. (Id. at
7  6.) This recognition was based on his study of the surveillance
8  images of the prior bank robberies and attempted robbery and the
9  description of the perpetrator given by victim tellers. (Id.)
10 Detective Collier was also shown the white tee shirt, dark hat, and
11 sunglasses defendant was carrying at the time of his arrest, which
12 appeared consistent with the items worn by the bank robber in the
13 previous robberies, including the robbery of F&M1 earlier that day,
14 as reflected in still images of that robbery. (Id.) Detective
15 Collier was also shown a blue plastic checkbook and bank robbery
16 note found inside the checkbook confiscated from the suspect, which
17 stated "I will shoot you and customers. This is a robbery. Open
18 your second drawer first and hand me the money then open up your
19 first drawer and hand me the money." (Id. at 6-7; Lopez Report at
20 1.)

21     Detective Collier was also shown a set of keys recovered from
22 Petitioner at the time of his arrest, which included a keyless
23 remote entry access device. (Id.) He instructed an officer to check
24 the immediate area and try to locate the car associated with the
25 key. (Id.) Detective Collier sought to locate and search the
26 vehicle because he believed it contained evidence of the robbery
27 that day (such as money stolen from F&M1, as no money was found on
28 Defendant's person) and because he was concerned that there could

1  be a loaded gun in the vehicle, posing a safety hazard. (<u>Id.</u> at 8.)

2  An officer located a vehicle which made a sound in response to the

3  officer pressing the keyless entry device. (<u>Id.</u> at 9-10.) Prior to

4  searching the vehicle, officers were able to establish, by running

5  the car's license plate through the Department of Motor Vehicles

6  ("DMV") database, that the vehicle was registered to Petitioner,

7  Vincent Anthony Jones, residing at 1135 M.L. King, Jr. Ave, #16, in

8  Long Beach, California. (<u>Id.</u> at 10.) The name and address were

9  identical to the name and address that appeared on Petitioner's

10 California Driver's License. (<u>Id.</u>)

11      Detective Collier ordered the vehicle impounded. (<u>Id.</u>) Prior

12 to having the car towed to a storage facility, Detective Collier

13 and FBI SA Gravis conducted an inventory of the contents of the

14 vehicle. (<u>Id.</u> at 11.) A large bundle of U.S. currency was found

15 inside the glove compartment of the vehicle. (<u>Id.</u>) Detective

16 Collier and SA Gravis compared the money found in the vehicle to

17 the serial numbers of the ten "bait" bills that were included in

18 money stolen from F&M1. (<u>Id.</u>) They found that the money from the

19 glove compartment included the "bait" bills. (<u>Id.</u>) This money taken

20 from the vehicle, which totaled $1,496, was logged as evidence.

21 (<u>Id.</u>)

22 **C.   Pre and Post-Trial Motions**

23      Prior to trial, Petitioner's Deputy Federal Public Defenders

24 Callie G. Steele and Koren L. Bell ("trial counsel") filed six

25 motions on his behalf. These included motions to suppress (1)

26 evidence seized from Petitioner's apartment (CR Dkt. No. 44); (2)

27 evidence seized from Petitioner's vehicle (CR Dkt. No. 45); (3)

28 evidence seized from the apartment of Petitioner's family member

(CR Dkt. No. 46); (4) a witness identifications based on a
photographic spread and show-up procedure (CR Dkt. No. 48); and (5)
evidence seized from Petitioner's vehicle pursuant to a warrant, or
in the alternative, for a Franks hearing (CR Dkt. No. 74).
Petitioner's counsel also filed on his behalf a motion to dismiss
the case for outrageous government conduct. (CR Dkt. No. 126.)
This court granted the first and third pre-trial motions to
suppress. (Dkt. Nos. 136, 108.) The court denied all other motions.
(CR Dkt. Nos. 98, 107, 109, 135.)

Petitioner's guilty plea was made without a plea agreement.
However, as part of Petitioner's plea, the parties and court
consented to Petitioner's reservation of his right to appeal this
court's denial of his motions to suppress evidence seized from his
vehicle and evidence seized pursuant to a warrant. (See CR Dkt.
Nos. 45, 74, 145; Opp. at 9.) Subsequently, Petitioner's appellate
counsel, Joseph F. Walsh ("appellate counsel"), appealed both of
these preserved issues. (See Gov. Ex. 4 at 5.) On June 1, 2012, in
an unpublished decision, the Ninth Circuit affirmed this court's
rulings. See U.S. v. Jones, 473 Fed.Appx. 761 (9th Cir. 2012).

On December 3, 2013, Petitioner filed the instant Section 2255
motion. (CV Dkt. No. 1.) On June 6, 2014, Petitioner filed a motion
to amend his Section 2255 motion. (CV Dkt. No. 8.) As discussed
below, Petitioner contends that his conviction should be set aside
due to ineffective assistance by his trial and appellate counsel.

///
///
///

7

## II.  Legal Standard

### A.  Section 2255

Section 2255 allows federal prisoners to file motions to vacate, set aside, or correct a sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. The petitioner in a Section 2255 motion bears the burden of establishing any claim asserted in the motion. To warrant relief because of constitutional error, the petitioner must show that the error was one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. See Hill v. United States, 368 U.S. 424, 428 (1962).

### B.  Ineffective Assistance of Counsel

Under the Sixth Amendment, all criminal defendants enjoy the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686-700 (1984). In Strickland, the Supreme Court held that in order to show ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient and fell below an objective standard of reasonableness and (2) the defendant was prejudiced as a result and deprived of a fair trial. Id. at 687. This two-part standard applies to ineffective-assistance claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003). In order to establish the first prong, "[i]f a prisoner pleads guilty on the advice of counsel, he

1   must demonstrate that the advice was not 'within the range of
2   competence demanded of attorneys in criminal cases.'" Tollett v.
3   Henderson, 411 U.S. 258, 266 (1973) (quoting McMann v. Richardson,
4   397 U.S. 759, 771 (1970)). In order to establish the second prong
5   in a plea agreement context, "the defendant must show that there is
6   a reasonable probability that, but for counsel's errors, he would
7   not have pleaded guilty and would have insisted on going to trial."
8   Hill, 474 U.S. at 59.

9        When a petitioner's Section 2255 motion alleges ineffective
10  assistance of counsel, an evidentiary hearing is necessary only if,
11  assuming the petitioner's factual allegations are true, the
12  ineffective assistance of counsel claim could prevail. See U.S. v.
13  Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994).

14

15  **III. Discussion**

16       Petitioner claims that his trial and appellate counsel were
17  ineffective for multiple reasons. Petitioner's claim is based upon
18  (i) trial and appellate counsel's alleged failure to argue that
19  there was an illegal search of his person in violation of the
20  Fourth Amendment; (ii) trial counsel's alleged failure to challenge
21  the constitutionality of the "field show-up" and witness
22  identification; (iii) trial counsel's alleged failure to challenge
23  the constitutionality of evidence seized from Petitioner's vehicle;
24  (iv) appellate counsel's alleged failure to challenge the
25  constitutionality of the evidence seized from Petitioner's vehicle;
26  (v) trial and appellate counsel's alleged failure to raise the
27  constitutionality of statements and evidence seized at the time of
28  arrest; (vi) alleged failure by trial counsel to subpoena

restaurant surveillance footage and request exculpatory evidence from the government; (vii) alleged failure by trial counsel to challenge the constitutionality of Petitioner's medical record. Additionally, in his motion to amend, Petitioner contends that his trial counsel failed to pursue DNA testing to prove his innocence.

At the change of plea hearing, the court and the government reviewed with Petitioner various consequences of entering a guilty plea and asked Petitioner whether he understood. (Gov. Ex. 3 [Transcript of May 6, 2010 Change Of Plea Hearing] at 6-13.) Petitioner repeatedly affirmed that he understood. (Id.) Petitioner stated that he agreed with the government's offer of proof, as quoted above. (Id. at 14.) In addition, Petitioner told the court that prior to entering his plea he had enough time to consider his decision and that he discussed his options and his case fully with his attorney. (Id. at 17.) He stated that he was satisfied with the representation that his attorney provided to him. (Id. at 17.) Statements made in open court at the time of a plea carry a "strong presumption" of truth and are entitled to "great weight." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir. 1986). Because Petitioner made these assertions in open court, Petitioner must make a strong showing to prove his claims.

The court considers each asserted ground for relief in turn.

**A.    Search of Person**

Petitioner asserts that his trial and appellate counsel were ineffective because they failed to challenge the constitutionality of the search of his person. (Mot. at 11.) He asserts that the search violated his Fourth Amendment rights because the arresting

10

1  officers exceeded the scope of a "Terry pat-down" when searching

2  inside Petitioner's pockets. See Terry v. Ohio, 392 U.S. 1 (1968).

3  The items seized from Petitioner's pockets included a checkbook and

4  a bank robbery note inside the checkbook. (Mot. at 16 & Ex. M.)

5  Petitioner asserts that it was this impermissible Terry pat-down

6  that lead to the probable cause supporting his arrest. (Mot. at

7  19.)

8     The record does not support Petitioner's contentions.

9  Defendant cannot establish that his counsel was ineffective in

10  failing to challenge the search because it appears such a

11  contention would be meritless. (See Boag v. Raines, 796 F.2d 1341,

12  1344, 1344 ("Failure to raise a meritless argument does not

13  constitute ineffective assistance.") Evidence provided by both

14  Petitioner and the government supports the conclusion that when the

15  police officers searched Petitioner's pockets, they already had

16  probable cause and were thus conducting a search incident to a

17  lawful arrest, not a Terry pat-down.

18     "There is probable cause for a warrantless arrest and a search

19  incident to that arrest if, under the totality of the facts and

20  circumstances known to the arresting officer, a prudent person

21  would have concluded that there was a fair probability that the

22  suspect had committed a crime." United States v. Gonzales, 749 F.2d

23  1329, 1337 (9th Cir. 1984).

24     Here, here the arresting officer, Claudia Lopez, described the

25  arrest in her report as follows:

26        We drove down the north/south alley and as we approached the
          south end of the t-alley [sic] we observed a male black
27        walking eastbound directly at the rear of 901 San Antonio. We
          immediately recognized the subject as the wanted suspect on
28        our Departmental issued Criminal Information Bulletin. . . .

1          Det. Rosales handcuffed the suspect and the suspect was taken
2          into custody. I conducted a pat-down search of the suspect and
           found a checkbook plastic cover with a balance book and a bank
3          robbery note...

4  (Mot. Ex. A.) As discussed above, the Bulletin referred to in the

5  statement presented four pictures of an individual during four

6  separate bank robberies or attempted robberies. (See Collier Decl.

7  at 5-6; Gov. Ex. 2.) Petitioner points to no evidence putting the

8  arresting officer's account of recognizing Petitioner from the

9  Bulletin in dispute.

10     The officers' immediate recognition of Petitioner is

11  sufficient to constitute probable cause. See, e.g., Gravenmier v.

12  United States, 380 F.2d 30, 31 (9th Cir. 1967) ("When the

13  investigating officer arrived in response to the manager's call, he

14  thought that appellant was a 'dead ringer' for the police composite

15  picture of the March robber. On the basis of the above information

16  the arresting officer had probable cause to arrest appellant as he

17  walked quickly away from the association.")

18     Because the officers had probable cause to arrest Petitioner,

19  the search of Petitioner's person did not violate the Fourth

20  Amendment. See Chimel v. California, 395 U.S. 752, 762-63

21  (1969)("When an arrest is made, it is reasonable for the arresting

22  officer to search the person arrested in order to remove any

23  weapons that the latter might seek to use in order to resist arrest

24  or effect his escape.") The failure of counsel to contend that the

25  officers lacked probable cause in conducting the search of

26  Petitioner's person thus cannot constitute ineffective assistance.

27  ///

28  ///

**B.   Field Show-up Procedure**

Petitioner asserts that his trial counsel provided ineffective assistance by failing to challenge the constitutionality of the witness identification conducted through the "field show-up." (Mot. 22-23.) This argument fails because the trial counsel did, in fact, move to exclude the witness identifications based on the field show-up. (CR Dkt. 48; Opp at 14.)

**C.   Evidence Seized from Vehicle (Trial Counsel)**

Petitioner contends that his trial counsel provided ineffective assistance by failing to challenge the constitutionality of the evidence seized from Petitioner's vehicle. (Mot. at 33.) This argument likewise fails because Petitioner's trial counsel did move to exclude the evidence at issue. Indeed, his trial counsel brought three separate pre-trial motions on the subject: a Motion to Suppress Evidence Found in Vehicle on May 1, 2009 (CR Dkt. 45); a Motion to Suppress Evidence Seized in Vehicle Pursuant to a Warrant or, in the Alternative, For a <u>Franks</u> Hearing (CR Dkt. 74); and a Motion to Reconsider Suppression of Evidence Seized Pursuant to Warrant or, in the alternative, for a <u>Franks Hearing</u>. (DR Dkt. 125).

**D.   Evidence Seized from Vehicle (Appellate Counsel)**

Petitioner contends that his appellate counsel provided ineffective assistance by failing to challenge the constitutionality of the evidence seized from his vehicle. (Mot. at 40.) This contention, too, lacks merit, as his appellate counsel did raise the issue on behalf of Petitioner in his appeal before

13

1  the Ninth Circuit.[1]  (Gov. Ex. 4 at 5; U.S. v. Jones, 473 Fed.Appx.
2  761 (9th Cir. 2012).

3  **E.    Statements and Evidence Seized at Time of Arrest**

4        Petitioner contends that both his trial and appellate counsel
5  provided ineffective assistance by failing to challenge the
6  constitutionality of statements and evidence seized at the time of
7  his arrest. (Mot. at 48-49.) In particular, Petitioner asserts that
8  his counsel unreasonably failed to challenge the admission of
9  statements made prior to his being Mirandized. (Id.) The motion
10  does not specify the statements Petitioner believes his counsel
11  should have moved to excluded. The only statements in the record
12  allegedly made by Petitioner before he was Mirandized were: "What's
13  going on? I was having some Chinese food at the restaurant." (Mot.
14  Ex. A.) Petitioner allegedly made these statements while he was
15  being placed in the back seat of the patrol car after being
16  arrested. (Id.) His counsels' failure to move to exclude the
17  statements cannot constitute ineffective assistance, as there would
18  be no reason for Defendant's counsel to seek to exclude the
19  statements because they were exculpatory, not inculpatory. In fact,
20  the *government* sought to exclude the statements as self serving
21  exculpatory evidence and inadmissable hearsay. (See Motion in
22  Limine re Admissibility of Evidence. (CR Dkt. No. 17.) Petitioner

23

24        [1] Appellate counsel raised two issues on appeal: (1) "Whether
25  the court erred in denying appellant's motion to suppress the money
    seized from his car on May 1, 2009, where the motion was made on
26  the grounds that the police lacked probable cause to conduct a
    warrantless search?" and (2) "Whether the court erred in denying
27  appellant's motion to suppress the cell phone and handwritten
    papers seized from his car on May 15, 2009, where the police made
28  material omissions and false representations in the search warrant
    affidavit?" (Gov. Ex. 4 at 5.)

1   opposed the motion and the court allowed the statements as
2   admissible to show Petitioner's state of mind at the time of his
3   arrest. (Dkt. Nos. 76 at 1-3; 98.)
4   **F.    Restaurant Surveillance Tape and Evidentiary Hearing**
5        Petitioner contends that his trial counsel provided
6   ineffective assistance by (1) failing to subpoena video
7   surveillance at a Chinese food restaurant where, as noted above,
8   Petitioner claimed he was eating prior to his arrest and (2)
9   failing to file a motion requesting exculpatory evidence from the
10  government for the surveillance tape. (Mot. at 58, 61.) The
11  arguments are unsuccessful.
12       Both the government and Petitioner's counsel investigated the
13  alleged alibi. According to the arrest report, on the day of the
14  arrest an officer visited the restaurant and reviewed the
15  surveillance video, concluding that "the suspect was not observed
16  in the restaurant surveillance video." (Mot. Ex. A.) The government
17  produced this report to Petitioner. Subsequently, an investigator
18  for Petitioner's counsel visited the restaurant and spoke with the
19  manager, who confirmed that the police had told him that the man in
20  the film was not the man they were looking for. (Id. Ex. C.)
21  Specifically, the manager stated that the man in the film had no
22  hair and the police told him that the man they were looking for had
23  long hair (like Petitioner). (Id.) The manager stated that he did
24  not believe the pictures would still be on the camera's memory
25  chip. (Id.) In February 2010, according to a report produced to
26  Petitioner, an FBI investigator interviewed the manager, who
27  reported that "he did not recall seeing a black male on the video
28  recording" and did not "specifically remember a black male coming

15

into the restaurant on the same day that the LBPD officers had come in." (Mot. Ex. D.) He stated that he no longer had the video recording. (Id.)

As to the first prong of the ineffective assistance of counsel inquiry, the court is not persuaded that counsel's performance in failing to subpoena the video "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 466 U.S. 688, rendering counsel's advise to Petitioner with respect to his plea ineffective. It appears from the record before the court that a subpoena of the video may have been futile as the recording no longer existed. Petitioner's trial counsel may also have found the police's representations regarding the video credible and thus reasonably made a strategic decision to focus resources on other aspects of the case.

Even assuming that his counsel erred in not subpoenaing the video, the court is not persuaded that there is a reasonable probability that, but for counsel's alleged error, Petitioner would not have pleaded guilty and would have insisted on concluding his trial. See Hill, 474 U.S. at 59. The admissible evidence proffered against Petitioner in this case with respect to the robbery of the F&M1 bank was overwhelming. As described above, this evidence included bank surveillance images, a bank robbery note allegedly found on Petitioner's person, and marked "bait" bills from the robbery allegedly found in the glove compartment of Petitioner's vehicle. (See Collier Decl. at 3, 11; Lopez Report at 1; Mot. Ex. A.) In view of this evidence, there is not a reasonable probability that, had the video been subpoenaed, it would have shown Petitioner

1  was at the restaurant at the time the F&M1 was robbed, and that, as

2  a result, Petitioner would have entered a different plea.

3      With respect to Petitioner's assertion that his counsel erred

4  by failing to file a motion asserting a <u>Brady</u> violation with

5  respect to the surveillance tape, this contention likewise fails.

6  The government's obligation is to preserve and produce any

7  potentially exculpatory evidence it has in its possession. <u>See</u>

8  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963); <u>Strickler v. Greene</u>, 527

9  U.S. 263, 280 (1999). Here, however, there is no reason to conclude

10 that the video was potentially exculpatory. The government timely

11 provided to Defendant the evidence it had in its possession related

12 to the Chinese restaurant, including a report stating that its

13 review of the video reflected that the video was not exculpatory.

14 Plaintiff has pointed to no reason to conclude that the video

15 contained anything other than what the government described.

16 **G.   Medical Records**

17     Petitioner asserts that his trial counsel provided ineffective

18 assistance by granting prosecutors permission to review his medical

19 records without his consent and then allowing prosecutors to use

20 such records against Defendant in their prosecution of him. (Mot.

21 at 65.) This claim fails. Contrary to Petitioner's understanding,

22 there exists no physician-patient evidentiary privilege in criminal

23 proceedings under federal law under which Petitioner's counsel

24 could have sought to exclude records obtained from his

25 physician(s). <u>See</u> <u>Galarza v. United States</u>, 179 F.R.D. 291, 294

26 (S.D. Cal. 1998) ("Under federal common law there is no physician-

27 patient privilege."; <u>In re Grand Jury Proceedings</u>, 801 F.2d 1164,

28 1169 (9th Cir. 1986).

1    Even were the records at issue subject to an evidentiary

2  privilege, Petitioner has not identified any manner in which his

3  medical records were relied upon by the government in the case it

4  planned and partly put on against him prior to his guilty plea. The

5  court's review of the record does not reflect any use or reference

6  to medical records by the government. As a result, Petitioner has

7  not shown that there is a reasonable probability that, but for his

8  counsel's alleged error in failing to move to exclude his medical

9  records, Petitioner would not have pleaded guilty. See Hill, 474

10  U.S. at 59. Petitioner therefore has no ineffective assistance

11  claim in relation to medical records.

12  **F.   Motion to Amend re DNA Testing**

13    On June 6, 2014, Petitioner filed a motion to amend his

14  original Section 2255 motion pursuant to Rule 15(c), which the

15  government opposes. (Dkt. Nos. 8, 9.) The motion seeks to add a

16  claim that Petitioner's trial counsel provided ineffective

17  assistance by failing to subpoena the results of a DNA test he

18  believes was performed by the government or to otherwise pursue the

19  use of DNA testing to support his case. (First Motion to Amend at

20  3, 6.) Petitioner asserts that he voluntarily gave the government

21  his DNA for testing at the time of his arrest, and then

22  subsequently requested, on various occasions leading up to and

23  during trial, that his counsel subpoena the results of any testing

24  performed by the government, but that his counsel failed to do so.

25  (Id. at 3-4.) He asserts that a comparison between his DNA and that

26  found on the suspected robbers' disguise (which was allegedly found

27  on his person at the time of his arrest) would show his innocence.

28  (See id. at 6; Collier Decl. at 4-5.) Petitioner also asserts that

his trial counsel never filed a motion asserting that Det. Collier and Officer Lopez committed perjury when they testified under oath that no DNA tests were ever conducted or existed. (Mot. Am. 1 at 4.)

As an initial matter, Petitioner's motion to amend is time-barred. As an original motion, Petitioner's amendment would be time-barred because it was not filed within one year from the date on which his conviction became final, December 10, 2012, the date that the Supreme Court denied his petition for writ of certiorari. See 28 U.S.C. 2255; Griffith v. Kentucky, 479 U.S. 314, 107 (1987); Opposition Ex. A. Although Petitioner's initial motion, filed December 3, 2013, was timely, the motion to amend, filed June 6, 2014, was filed outside of the one-year period. (Dkt Nos. 1, 8.)

Under Rule 15(c)(2), an amendment to a pleading may relate back to the date of the original filing and therefore be deemed timely "where the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Supreme Court has held that Rule 15(c)(2) applies to post-conviction motions, including Section 2255 motions. See Mayle v. Felix, 545 U.S. 644, 657-58 (2005). To relate back to the original Section 2255, however, an amended Section 2255 claim must concern one of the "separate categories of facts supporting the grounds for relief" asserted in the original motion, each of which "delineate an 'occurrence.'" Id. at 661. On this basis, the court held in Felix that an amended petition challenging the defendant's statements at a pretrial interrogation did not relate back to the

original petition which addressed the admission of videotaped

testimony of a witness. Id. at 657-661.

Here, Petitioner's proposed amended Section 2255 petition does

not relate to the original petition because, while the original

petition discussed numerous other issues as reviewed above, it did

not did not raise or discuss DNA testing. The amended petition

therefore does not relate to the same "conduct, transaction, or

occurrence" under Rule 15(c)(2) and is thus time-barred.

Even were the amended petition not time-barred, the court

would deny the petition on the merits. Petitioner's argument that

DNA tests would have established his innocence is, under the facts

of this case, too speculative to support an ineffective assistance

claim. There is, as an initial matter, no basis other than

speculation to conclude that any DNA test was ever performed in

this case. Moreover, in the face of the powerful evidence proffered

against him, as discussed above, Petitioner has not shown that

there is any reasonable probability that, were a DNA test performed

comparing his DNA with DNA found on the robber's disguise (which,

as noted, was allegedly found on his person at the time of his

arrest) would have (1) found a mismatch and (2) been sufficient to

cause his counsel to recommend against accepting a guilty plea. See

Jackson v. Calderon, 211 F.3d 1148, 1155 (9th Cir.2000) (no

Strickland prejudice when no showing that proper investigation

would have uncovered favorable evidence); Paul v. Gibson, 2014 WL

2547594 (C.D. Cal. Apr. 22, 2014) report and recommendation

adopted, , 2014 WL 2547596 (C.D. Cal. June 5, 2014) ("Mere

speculation about the existence of favorable DNA evidence is

insufficient to show ineffective assistance.")

20

**G. Motion to Amend to Add Claim that Counsel Failed to Present Proper Case Law**

On July 11, 2014, Petitioner filed a second motion to amend his original habeas petition. (Dkt. No. 10.) The gravamen of the motion is that Petitioner's trial and appellate counsel provided ineffective assistance by failing to challenge the court's alleged misapprehension of the holding of a case, <u>California v. Carney</u>, 471 U.S. 386 (1985), that was discussed at a suppression hearing concerning evidence seized from Petitioner's vehicle on March 23, 2011. Unlike the previous motion to amend, this motion relates back to Petitioner's original Section 2255 motion, which raised an ineffective assistance claim concerning suppression of the same evidence. However, the claim is plainly meritless.

In <u>Carney</u>, the Supreme Court explained the longstanding rule that no warrant is necessary in certain circumstances for the search of an automobile where probable cause exists and found that exception to the warrant requirement applicable in the case of a mobile home. 471 U.S. at 395. Petitioner contends that the court misconstrued <u>Carney</u> as standing for the proposition that no probable cause is necessary when conducting a search of a vehicle. (<u>See</u> Second Motion to Amend at 6-9.) He contends that his trial counsel provided ineffective assistance by failing to challenge this incorrect interpretation of <u>Carney</u> during the suppression hearing. (<u>See</u> <u>id.</u> at 2.)

Petitioner mischaraterizes the record. The transcript of the March 23, 2011 suppression hearing demonstrates that the court and counsel for both Petitioner and the government understood that <u>Carney</u> did not obviate the need for a showing of probable cause.

21

1   (See CR. Dkt. No. 168 at 26-31.) Indeed, the brief mention of
2   Carney was made in the context of a discussion concerning the
3   existence of probable cause to search Petitioner's vehicle, which
4   was followed by the testimony of Det. Collier concerning the basis
5   for the government's contention that the vehicle's search was
6   supported by probable cause. (Id. at 26-55.) Following Det.
7   Collier's testimony, the court issued a ruling denying the motion
8   to suppress on the grounds that the search of the vehicle was
9   justified by probable cause in the circumstances. (Id. at 67:19-
10  68:5.) There is no evidence that the court or the parties
11  misunderstood or misapplied Carney. Even if Carney were misstated
12  by any party or the court to suggest no showing of probable cause
13  was necessary to search the vehicle, Petitioner suffered no
14  prejudice because the court declined to suppress the evidence
15  seized during the search on the basis of its finding that the
16  search was supported by probable cause.

17      Petitioner additionally argues that his appellate counsel
18  "'failed'" to file and argue the 'proper argument'" to suppress the
19  evidence seized from his vehicle. (Second Motion to Amend at 20.)
20  Although nominally framed as an ineffective assistance claim,
21  Petitioner essentially makes a merits argument that the search
22  violated the Fourth Amendment because the officers did not have
23  probable cause to search his vehicle. Fourth Amendment claims are
24  not cognizable under federal habeas review, unless no prior
25  opportunity was provided to litigate those claims. Stone v. Powell,
26  428 U.S. 465, 481-82 (1976). As discussed above, Petitioner's trial
27  counsel filed a suppression motion and Petitioner's appellate
28  counsel filed an appeal on this issue, which the trial court and

the Ninth Circuit, respectively, denied. In any case, having
reviewed the appeal, the court does not find any notable deficiency
in the quality of Petitioner's appellate counsel's advocacy and
certainly none that would support an ineffective assistance claim.
See, e.g. Jones v. Barnes, 463 U.S. 745, 754 (1983) ("For judges to
second-guess reasonable professional judgments and impose on
appointed counsel a duty to raise every 'colorable' claim suggested
by a client would disserve the very goal of vigorous and effective
advocacy underlying [Anders v. California, 386 U.S. 738 (1967)].
Nothing in the Constitution or our interpretation of that document
requires such a standard.") (quotations in original).

Accordingly, the second motion to amend will be granted but
the additional claims asserted in the motion, which is incorporated
into the original habeas petition, lack merit and will be denied.

**IV.   Conclusion**

For the reasons stated above, Petitioner's first Motion to
Amend Original and Timely Filed 28 U.S.C. § 2255 Motion Pursuant to
Relief Under Rule 15(c) (Dkt. No. 8) is DENIED; Petitioner's second
Motion to Amend Original and Timely Filed 28 U.S.C. § 2255 Motion
Pursuant to Relief Under Rule 15(c) (Dkt. No. 10) is GRANTED; and
Petitioner's Motion to Vacate, Set Aside, or Correct Sentence
Pursuant to 28 U.S.C. § 2255 (Dkt. No. 1), which incorporates the
claims made in Petitioner's second motion to amend, is DENIED.
IT IS SO ORDERED.

Dated: August 26, 2014

DEAN D. PREGERSON
United States District Judge

23